**IN THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF COLORADO
Judge Daniel D. Domenico**

Case No. 18-cv-02756-DDD-MEH

CAMMEO RENFRO, BARB MCGRAW, and DESIREE DEMPSTER,

   Plaintiffs,

v.

CHAMPION PETFOODS USA, INC., and
CHAMPION PETFOODS LP,

   Defendants.

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

This case is about dog food. Defendants manufacturer and sell dog food; Plaintiffs purchase it. Plaintiffs claim they were induced to do so by various false statements made by Defendants. Before the court is Defendants' motion to dismiss those claims. Doc. 65.

The motion presents the question whether Plaintiffs' second amended complaint alleges a false or misleading statement made by Defendants Champion Petfoods USA, Inc., and Champion Petfoods LP (collectively, "Champion") on their packaging of its premium dog food brands Orijen and Acana. The packaging said that Orijen and Acana are "Trusted Everywhere," made from "Ingredients We Love [From] People We Trust," composed of "Biologically Appropriate" ingredients, and sourced with "Fresh Regional Ingredients." Plaintiffs allege each of these four assertions was false, and this case is one in a spate of litigation against Champion for its packaging claims.

Plaintiffs lack standing to challenge one of the statements—"Biologically Appropriate"—because they weren't harmed by it. And the other statements—"Trusted Everywhere," "Ingredients We Love [From] People We Trust," and "Fresh Regional Ingredients"—are marketing puffery. The Court **GRANTS** Champion's motion to dismiss.

## BACKGROUND

Because this case is before the court on Champion's motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the court accepts as true the well-pleaded factual allegations in the second amended complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff Cammeo Renfro has a boxer-shepherd mix named Iha, for whom she purchased Champion's Acana brand of dog food from June 2016 to September 2017. Doc 51 ("SAC") at ¶ 6. Plaintiff Barb McGraw has a German shepherd named Beau, for whom she purchased Champion's Orijen brand of dog food from 2014 to 2016, and Acana from mid-2016 to November 2018. *Id.* at ¶ 7. And Plaintiff Desiree Dempster purchased both Orijen and Acana for her dog from 2006 until 2016. *Id.* at ¶ 8.

The packaging of the various Acana and Orijen products purchased by Plaintiffs contained numerous representations, but Plaintiffs focus on four that they argue are false and induced them to pay unwarranted premium prices. First, the packaging said that Acana and Orijen dog food was "Trusted Everywhere." *Id.* at ¶ 10. Second, it said that it contained "Ingredients We Love [From] People We Trust." *Id.* Third, that its ingredients were "Biologically Appropriate," which, according to the packaging, means that the food would "nourish as nature intended" by "mirror[ing] the richness, variety, and WholePrey meats that dogs are

evolved to eat." *Id.* at ¶ 50. And fourth, the packaging said Champion's approach to sourcing ingredients for Acana and Orijen was to "focus" on the use of "Fresh Regional Ingredients": "We focus on local ingredients that are ethically raised by people we know and trust." *Id.* at ¶¶ 10, 51, 93.

These four assertions were false or misleading, according to Plaintiffs, because Champion failed to adequately test for the presence of heavy metals, there was a risk that pentobarbital contaminated some of the red-meat versions of Acana and Orijen, at least 70% of the ingredients in the dog foods were from non-regional sources, and "large amounts" of the ingredients were non-fresh ingredients like "regrinds." *Id.* at ¶¶ 57, 74, 96. Regarding potential pentobarbital contamination specifically, the second amended complaint alleges that on May 7, 2018 government agencies alerted Champion that some of the beef tallow it uses as an ingredient in its red-meat based dog foods might contain pentobarbital. *Id.* at ¶ 152. The second amended complaint says this put Champion on notice that its red-meat dog food was "at risk" of containing pentobarbital. SAC at ¶¶ 11, 157.

Based on these alleged misrepresentations, Plaintiffs filed suit. The court has diversity jurisdiction under 28 U.S.C. § 1332 and, as the parties recognize, Colorado law governs the substance of Plaintiffs' claims. *See Kokins v. Teleflex, Inc.*, 621 F.3d 1290, 1295 (10th Cir. 2010). The court initially stayed the case pending the outcome of related litigation in federal court in California. Doc. 32. Once that litigation resolved, the stay was lifted, Doc. 48, and Champion filed the motion to dismiss now before the court. After the passing of Judge Daniel, the case was reassigned to me.

# ANALYSIS

## I. False and Misleading Statements

Champion argues that each of Plaintiffs' claims fail for the same reason: they've failed to allege that any of the statements identified by the second amended complaint aren't false or misleading as a matter of law. Doc. 65 at 2. Plaintiffs' seven claims for relief are: (1) violation of the Colorado Consumer Protection Act; (2) breach of express warranty; (3) breach of the implied warranty of merchantability; (4) fraudulent misrepresentation; (5) fraudulent concealment; (6) unjust enrichment; and (7) negligence. All of these claims rest on the allegation that Champion made false or misleading statements on its dog food packaging.[1] So if any claim fails to allege false or misleading representations, it must be dismissed. *See Iqbal*, 556 U.S. at 678 (to survive a motion to dismiss for

---

[1] Most of the claims asserted in the second amended complaint necessarily require proof that Champion made a false or misleading representation of fact. *See Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 147 (Colo. 2003) (claim for violation of the Colorado Consumer Protection Act requires evidence of "a false representation as to the characteristics, ingredients, uses, benefits, alterations, or quantities of goods, food, services, or property or a false representation as to the sponsorship, approval, status, affiliation, or connection of a person therewith." (citing Colo. Rev. Stat. § 6-1-105(e)); Colo. Rev. Stat. § 4-2-313(1)(a) (an express warranty is created by, among other things, making "any affirmation of fact"); Colo. Rev. Stat. § 4-2-314(2)(f) (implied warranty of merchantability requires that goods "conform to the promises or affirmations of fact made on the container or label"); *Bristol Bay Prods., LLC v. Lampack*, 312 P.3d 1155, 1160 (Colo. 2013) (claim of fraud requires "that the defendant made a false representation of a material fact"); *Rocky Mountain Expl., Inc. v. Davis Graham & Stubbs LLP*, 420 P.3d 223, 234 (Colo. 2018) (fraudulent concealment requires evidence that defendant concealed "material existing fact"). And while Plaintiffs' other claims, unjust enrichment and negligence, don't always require evidence of a false statement of fact, here those claims are based on the same alleged misrepresentations identified in the second amended complaint. Doc. 51 at ¶¶ 284, 294.

failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the second amended complaint "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Champion's motion, then, requires consideration of what it means for a statement to be false that it might give rise to civil liability under Colorado law. Colorado's model jury instruction for claims of deceit based on fraud offers a general definition: "A false representation is any oral or written words, conduct, or combination of words and conduct that creates an untrue or misleading impression in the mind of another." Colo. Jury Instr., Civil 19:3. And the Colorado Supreme Court has said, in a different context, that "a statement contains false information if, considered as a whole, the substance or gist of the statement is false. The fact that a statement may have contained some false information does not necessarily make the substance or gist of the statement false." *Denver Pub. Co. v. Bueno*, 54 P.3d 893, 899 (Colo. 2002).

Generally, whether a statement meets this definition is a fact question for the jury, not a legal question for the court to decide. *See Lesser v. Porter*, 30 P.2d 318 (Colo. 1934). But when statements are so general or devoid of specific factual content that they are incapable of empirical verification they can't, as a matter of law, give rise to liability. *Park Rise Homeowners Ass'n, Inc. v. Res. Const. Co.*, 155 P.3d 427, 436 (Colo. App. 2006). In *Park Rise*, for example, the court held that a statement that a home as made with "quality construction" was an opinion so general as to not be capable of factual verification and thus couldn't give rise to a claim under the Colorado Consumer Protection Act as a matter of law. *Id.* And in *Shaw v. General Motors Corp.*, 727 P.2d 387, 391 (Colo. App. 1986), the court held that the statement "Chevy's business is providing

5

the right truck for your business" is "merely the sellers' opinion or 'commendation of the goods'" and so cannot create an express warranty of their quality. *Park Rise* relied on the Fifth Circuit's decision *Presidio Enterprises, Inc. v. Warner Brothers Distribution Corp.*, 784 F.2d 674, 679 (5th Cir. 1986), which offered the following definition of what constitutes a statement of fact for purposes of civil liability: "A statement of fact is one that (1) admits of being adjudged true or false in a way that (2) admits of empirical verification."

## II. "Trusted Everywhere" and "Ingredients We Love [From] People We Trust"

Perhaps surprisingly, "puffery" is an important legal concept. "The term *puffery* is used to characterize those vague generalities that no reasonable person would rely on as assertions of particular facts." *Alpine Bank v. Hubbell*, 555 F.3d 1097, 1106–07 (10th Cir. 2009). Such statements can't be the basis for any claim that takes as one of its elements a misrepresentation of fact like the claims in the second amended complaint. *See id.* (claim of negligent misrepresentation under Colorado law); *see also, e.g.*, *Park Rise*, 155 P.3d at 435 ("We conclude that the [Colorado Consumer Protection Act] does not, as a matter of law, make actionable a statement which would otherwise be mere puffery."); *Shaw*, 727 P.2d at 391 (an expression of a sellers' "commendation of … goods" and cannot create an express warranty). This is because statements constituting puffery fall into the category of "kinds of talk which no sensible man takes seriously, and if he does he suffers from his credulity. If we were all scrupulously honest, it would not be so; but, as it is, neither party usually believes what the seller says about his own opinions, and each knows it." *Alpine Bank*, 555 F.3d at 1107 (quoting *Vulcan Metals Co., Inc. v. Simmons Mfg. Co.*, 248 F. 853, 856 (2d Cir. 1918) (Hand, J.)). For example, "mass advertising expressed in vague terms" like "You're

6

in good hands with Allstate" is non-actionable puffery because no rational adult would rely on it as a statement of fact. *Id.*

At least two of the statements relied on by Plaintiffs—"Trusted Everywhere" and "Ingredients We Love [From] People We Trust"—are puffery and thus not actionable misrepresentations. These are the same sort of vague generalities like "You're in good hands with Allstate," which pervade corporate (and political) marketing campaigns. *See Vulcan Metals*, 248 F. at 856 ("Such statements, like the claims of campaign managers before election, are rather designed to allay the suspicion which would attend their absence than to be understood as having any relation to objective truth."); *cf.* George Orwell, *Politics and the English Language* (1946) ("Thus political language has to consist largely of euphemism, question-begging and sheer cloudy vagueness.")

The court admits that the temptation to punish, or at least not let off the hook, such language is strong. *See* Orwell, *Politics and the English Language* ("But if thought corrupts language, language can also corrupt thought."). But while puffery itself is nothing to encourage, the puffery *rule* may have salutary effects. By denying liability based on puffery, the rule encourages consumers to beware of such language, not to allow themselves to be corrupted by it, and to base their buying decisions on verifiable information, not slogans. So perhaps it is by denying liability for mere puffery that the legal system encourages careful consumption and healthy skepticism of sloganeering or other forms of euphemism and "cloudy vagueness."

Such is the case here. What *facts*, after all, would render the challenged phrases false? Notably, Plaintiffs do not argue that they will disprove that people "everywhere" trust these products, or that some people don't actually love the ingredients used. Plaintiffs say instead that

7

"Trusted Everywhere … implies vigilance on the part of [Champion] to monitor, test, and screen for non-nutritious contaminants, such as heavy metals [and] pentobarbital." Doc. 78 at 16. But that's not what it says. "Trusted Everywhere," is a generic phrase about the product, and no reasonable person could read into such a statement that Champion was talking about a specific monitoring program for heavy metals in dog food.

Plaintiffs are right that "Trusted Everywhere" and "Ingredients We Love [From] People We Trust" are part of an effort to induce a consumer into paying more for dog food. *Id.* ("[Champion]'s 'trust' claims are specifically designed to induce consumers to pay a premium price for [Champion]'s products."). But this is the essence of puffery: "It is quite true," as Learned Hand put it, "that they [puffery] induce a compliant temper in the buyer, but it is by a much more subtle process than through the acceptance of his claims for his wares." *Vulcan Metals*, 248 F.3d at 856.

Plaintiffs have failed to explain how "Trusted Everywhere" and "Ingredients We Love [From] People We Trust" are affirmations of verifiable fact that a reasonable person could rely on in their purchasing decisions. They are, instead, examples of marketing puffery, and can't serve as the basis for any of the claims in the second amended complaint.

### III. "Biologically Appropriate"

The same may well be true of Champion's statement that the food was "Biologically Appropriate." But the claim based on this statement fails for another reason as well—Plaintiffs do not have standing to bring it. Plaintiffs point to allegations in the second amended complaint that Champion was notified a shipment of beef tallow (an ingredient in dog food) it received in 2018 was contaminated with pentobarbital. Doc. 51

at ¶ 152. The receipt of this shipment created "a risk" that the Plaintiffs' dog food was contaminated by pentobarbital. *Id.* at ¶ 11.

To have standing to bring a claim, a plaintiff must have suffered actual harm that a ruling in their favor would remedy. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 5601 (1992). Plaintiffs Renfro and Dempster purchased the dog food at issue *before* the 2018 shipment of beef tallow allegedly contaminated with pentobarbital. Doc. 51 at ¶¶ 6, 8. And Plaintiff McGraw did not purchase any food that used red meat and beef tallow. *Id.* at ¶¶ 7, 157. So Plaintiffs suffered no harm as a result of the alleged misstatement.[2] *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 333 (2006) ("A plaintiff must allege personal injury" to have standing to bring a claim). Whatever else it may have done, the 2018 shipment could not have diminished the biological appropriateness of the food actually purchased by the Plaintiffs before then.

## IV. "Fresh Regional Ingredients"

This leaves only the claims surrounding Champion's assertions that its dog food "is the fullest expression of our … fresh regional ingredients commitment" and that Champion "focus[es] on local ingredients that are ethically raised by people we know and trust." Doc. 51 at ¶¶ 48, 51. These statements aren't empirically verifiable and thus cannot serve as the basis for a claim of fraud. Both turn on Champion's characterization of its own desires and goals: these depend on its own "focus", its

---

[2] Plaintiffs likewise assert that this phrase is false because the dog food purchased by them "contained more heavy metals than fresh, Biologically Appropriate ingredients." Doc. 78 at 13. But Plaintiffs cite no facts in the second amended complaint to support this assertion, so it cannot serve as a basis to state a claim for relief. *See Twombly*, 550 U.S. at 555–56 (to survive a 12(b)(6) motion to dismiss, complaint plaintiff must point to well-pleaded facts in complaint supporting right to relief).

9

"commitment" and "fullest expression." These are inherently subjective ideals, and what one person (or company) might think is enough to make something a focus or commitment may be very different from what another company, let alone various consumers, might read into such claims. How would a court or jury decide what percentage of fresh and regional ingredients would be enough to be a "focus" or a "commitment" or a "full expression"? 90%? 40%? 10%? What constitutes "fresh" in the dog food context? What is regional? Perhaps these statements could be proven false if, say, Plaintiffs alleged that Champion simply took generic dog food and rebranded and repriced it. But that's not their claim. Indeed, multiple other statements on the packaging, including the ingredient list, make clear that not all the ingredients were fresh or regional. For example, the package for Orijen's Six Fish dog food states clearly that only eleven of the thirteen pounds of food are from "fresh, raw or dried ingredients" and that, of those eleven pounds, two-thirds of the ingredients are "fresh or raw" and one-third is "dried." Doc. 51 at Ex. 1. ¶ 1(h). No reasonable consumer would read these statements as conveying empirically verifiable factual content.

Plaintiffs respond by isolating the words "fresh" and "regional" to argue that the inclusion of *any* non-fresh and non-regional ingredients render these words literally false. Doc. 78 at 10–14. But even if those two terms are somehow each settled and verifiable in the dog-food context, the entire statement must be read *in context* to determine if it is misleading. *See Grossman v. Novell, Inc.*, 120 F.3d 1112, 1120 (10th Cir. 1997). And read that way, as a reasonable consumer must, Champion included important qualifications that rendered its statement incapable of verification.

### V. Misrepresentation by Omission

Champion also moves to dismiss the second amended complaint to the extent it is premised on a theory of misrepresentation by omission

10

because it was under no duty to disclose the allegedly omitted facts. The parties agree that, under Colorado law, whether a duty to disclose exists is governed by Section 551(2) of the Restatement (Second) of Torts. Plaintiffs say Champion owed it a duty to disclose "the risk of pentobarbital, heavy metals, the inclusion of nondisclosed non-regional ingredients, and the inclusion of other non-fresh ingredients" that didn't "conform" to the representations on the food packaging. Doc. 78 at 17. They invoke Section 551(2)(c) of the Restatement (Second), which says that "one party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated subsequently acquired information that he knows will make untrue or misleading a previous representation that when made was true or believed to be so." Restatement (Second) of Torts § 551(c)(2) (1977); *see also Poly Trucking, Inc. v. Concentra Health Servs., Inc.*, 93 P.3d 561, 564 (Colo. App. 2004) (same). But for the reasons stated above, the second amended complaint contains no representations that are actionable—regardless of the facts existing or later discovered by Champion. So the second amended complaint cannot survive on a fraud-by-omission theory.

## CONCLUSION

For the foregoing reasons going reasons, the court **GRANTS** Champion's motion to dismiss. Doc. 65. The clerk is directed to enter judgment in favor of Champion and to terminate the case.

Dated: July 31, 2020.

BY THE COURT:

Daniel D. Domenico
United States District Judge

11